Oh, can we call the case? With pounces, I'm going to argue this matter. Please approach the podium. Identify yourselves for the record and the party that you're representing. Good morning, Stephen Gentry, representing Miguel Deleon. Good morning, Your Honors. David Biskowich, ISKOWICH with the State's Attorney for the People. 15 minutes apiece. Time for rebuttal. Counsel? Yes. How much? Five minutes. Five minutes. Okay. All right. We proceed. Miguel Deleon respectfully requests that this Court vacate his 80-year de facto life sentence for offenses committed when he was 17 years old because he is not one of those rare juvenile offenders who is incapable of rehabilitation in violation of the U.S. Constitution and the Illinois State Constitution. Alternatively, because the sentencing court below did not properly apply required statutory factors, this Court should order the same. So is Miller applicable here? Miller is definitely applicable. And how is it? The State argues that this is not a de facto life sentence? That's correct, Your Honor. And the State's, that is the State's primary argument, in fact. And the State bases that on a couple of things, both of them incorrect. First of all, the State points this Court to the Department of Corrections' website, asks this Court to take judicial notice of this. However, the Department of Corrections' recordkeeping and reporting is not what is at issue in this appeal. It's an appeal of the sentencing court's sentencing order. And if this Court takes any judicial notice of the Department of Corrections' website, I would ask that this Court take judicial notice of the disclaimer on the website indicating that the information there is not necessarily correct and should not be presumed to be correct without contacting the Department directly in writing. Now, Mr. Gentry, in your opinion, what's the earliest date on which this defendant may be released? 40 years plus two months, Your Honor. And why do you say that? Because I thought that you can regain your good credit, good time credit. Well, Your Honor, there's no showing on this record that there's any meaningful opportunity to regain that credit. There was testimony at the sentencing hearing from a Department of Corrections representative indicated that it was possible to request that that time be given back. But there were, there's no indication that there are any standards by which the Department of Corrections would be following that, and certainly none related to juvenile sentencing factors or a finding of permanent incorrigibility. But it doesn't really matter anyway, right? Because aren't we supposed to look at what is possible when the person is sentenced with respect to good time credit? In this instance, it would just be 40 years. Wouldn't it seem 40 years? Possible is not the language, Your Honor. Miller speaks of a meaningful opportunity. And as was found in Gates, in a similar situation, the Illinois parole, under 21 parole statute, for example, does not provide a meaningful opportunity. When looking at the Eighth Amendment, what we're talking about is national consensus. And with respect to the Illinois under 21 parole statute, for example, and similarly, with respect to any attempt to request good time back, what we see is that Illinois is an outlier nationally by limiting the number of opportunities and limiting, requiring only after 20 years and then after 10 additional years. So he's been on timing a brief regarding parole. And why should we enter into that area and consider it since people were suspensors upstairs and they're considering that case, which is a parole case? Your Honor, what is at issue here is whether there is, with respect to the determination of whether it's a de facto life sentence, is whether there is a meaningful opportunity for release. And so we have identified numerous factors. I spoke, number one, of Illinois being a national outlier. There's also a lack of judicial review here. And perhaps even more significantly, there's language in that statute stating that an individual shall not be paroled if it would denigrate the seriousness of the offense, indicating that certain offenses are not subject to parole regardless of whether there's rehabilitation or potential for rehabilitation. And again, going back to my question, we're, you know, an interim court of review. Since this issue is before the Illinois Supreme Court, shouldn't we wait to see what they opine in this area? And if you need the site, I can give you the site, the people versus Spencer, which is 2023 Interlap First 200-646-U, which means it's Rule 23. Sure, Your Honor. I don't have any more material on that case for this morning, but... So, counsel, you do keep talking about Miller, but isn't it true that Jones v. Mississippi is the U.S. Supreme Court decision and People v. Wilson is the Illinois Supreme Court decision that we'll have to guide our decision-making in this case? Both of those cases are procedural cases. And Mr. DeLeon is not advancing our procedural argument today. Certainly, we acknowledge that an on-the-record finding of incorrigibility is not required procedurally, and that's not what we're arguing here today. What we're arguing is that, substantively, Mr. DeLeon is not permanently incorrigible, and therefore, as applied, this sentence violates the Eighth Amendment of the U.S. Constitution, and also, similarly, is in violation of the Illinois Proportionate Penalties Clause. Well, how does your argument coincide with the Supreme Court case of Jones with regards to incorrigibility? So, again, that Jones, the Jones decision held that an on-the-record finding is not required procedurally. What we are not arguing here today is that there was a procedural defect in the Court's determination. What we are arguing is that the Court's determination itself, not that the Court didn't have discretion, but that the Court's exercise of discretion was in violation of the Eighth Amendment to the U.S. Constitution because Mr. DeLeon is not one of those rare juvenile offenders who is incapable of rehabilitation. And so while these cases have limited procedurally what is required, none of these cases have overruled the central premise of Miller substantively, which is that no juvenile shall be sentenced to a life term unless they are one of those rare individuals who is incapable of rehabilitation. Well, following Miller, what steps did the trial court miss here? Again, it was not a lack of following of steps. It was the actual determination, Your Honor. And here it's an implicit determination because the Court did not make an on-the-record finding. We're not saying that the Court was required to, but the Court sentenced where Mr. DeLeon was ineligible for release until he served more than 40 years as a result of the two months' loss of good time. Because of that, there is a requirement that the Court not sentence him past 40 years unless he is one of those rare juvenile offenders. Well, counsel, if we extrapolate your logic, then should every trial court who is sentencing a defendant have to decide or incorporate in that decision the possibility that the individual being sentenced may lose or be assessed additional time for violations and, therefore, that the sentence would exceed 40 years as allowed? It sounds to me, if we extrapolate your logic to its conclusion, that that's where we're going. Is that what you're telling me? That's not correct, Your Honor. The loss of good time here occurred prior to the issue of the sentence. And so Mr. DeLeon was powerless at that point to go back in time and get that time back. And so the sentence ordered here cannot be completed until he has served more than 40 years. Let us speak in the hypothetical then. If at the time the trial judge sentenced a defendant, any defendant, this hypothetical defendant, and this hypothetical defendant subsequently committed some violations while in IDOC and, therefore, was assessed time that would exceed the 40 years, is that hypothetical defendant now entitled to a resentencing because now his sentence would extend beyond the 40 years? Well, Your Honor, that would be an instance where the hypothetical defendant has been sentenced and at the time of sentencing could get out in the proper amount of time. But because of subsequent behavior on the part of that defendant, that would cause the defendant then to pass. I see. So that's what's different about this case. I see. Please continue. Well, I want to go back to the sentencing. Looking at the record, it's obvious that the judge's criticism of the record, this was not something that was done very summarily. He actually took great pains to consider all the ramifications here and all the factors. And he said that there were many days where he considered what he was going to do with regards to the sentencing. And he also mentioned on the record that Mr. DeLeon appeared to be also still keeping company with his former colleagues, as well as that he didn't seem to be showing what he, the judge, perceived. This is the judge now, right? That there was any remorse in terms of what had happened at the time of the incident from Mr. DeLeon. And part of this, in terms of sentencing, is also a trial judge's ability to determine credibility, right? And so we're not there, we can't see, so this trial judge is our eyes, and that's what he said on the record. So aren't we supposed to take that into consideration here? Your Honor, the statute states that the judge shall consider any statement of remorse. Certainly, the record is clear, this is a statement of remorse. Whether the judge liked his demeanor or not, this is a statement of remorse, and the judge's comments indicated that it was not accepted as such. And I would also point this Court to another statement that the judge made, that I would argue undercuts the characterization of the judge's comments as being indicative of carefully measuring these factors. And that's where the judge said that he considered any history of developmental disability, and then the Court said, as it may have existed, or in this case, maybe not. And so this indicates that the judge was not sure whether there was developmental disability in this case, and the record is clear that Mr. DeLeon was involved in special ed classes and that he had a speech impediment. And so these two specific comments by the judge indicate that the judge was not properly reviewing the factors. And what is that emotional speech impediment relevant here? It contradicts the Court's finding, the Court's statement that developmental disability may not have existed in this case. It indicated that the Court was not aware of that fact, which was listed in the pre-sentencing investigation reports and was not in dispute in this case. Was there any evidence then in the PSI? Yes, Your Honor. It's listed in the PSI. That the speech impediment was causing him to have some inability to think properly? It was the existence of the developmental disability. I'm not saying that the speech impediment caused this crime, Your Honor. I'm just saying that the Court did not properly consider all the factors. Okay. Anything else, Counsel? Your Honor, I would just, in conclusion, point out that Mr. DeLeon, the evidence is clear. He has renounced gangs. He has renounced drugs. He's taken classes. He's taken up faith. More important than that, he's become a man. He's become a mature adult. And the mitigation report of Helen Skinner speaks to this as well as anyone could. And for the reasons in the briefs and as argued this morning, we argue that this Court should vacate his sentence and remand for a proper sentencing hearing with consideration of the required constitutional and statutory factors. Thank you, counsel. Thank you. Mr. Tate. Good morning again, Your Honors. David Iskowich, counsel. May it please the Court. So I'd like to start with the first argument, which is not a primary argument as counsel, my able counsel has characterized it, but it's simply a threshold argument. Before we even get to the Miller compliant question, we first have to examine whether or not this defendant is in fact serving a de facto life sentence. As Buffer explained, any sentence exceeding 40 years is a de facto life sentence. Any sentence of 40 years or less isn't. And the protections afforded by Miller in Miller's line of cases don't apply to a sentence under those circumstances. So, counsel, are we allowed to rely on the IDOC website when determining the earliest date that defendant may be released? Our view, Your Honor, is that the Supreme Court has endorsed the proposition that this Court may take judicial notice of facts on the Department of Corrections website. That's one of three pegs that we've given this Court to hang its hat on with respect to the de facto life argument. The Supreme Court has said that the Court may take judicial notice of those facts and our review of that data shows that the defendant is scheduled to be released. When I filed my brief in September, he was scheduled for August of 2033. My most recent view of that website yesterday shows that he's actually earned six more weeks of credit, so he's now scheduled for release in June of 2033 after serving approximately 36, I believe it's 36 or 37 and a half years in prison on the 80-year sentence. So we believe that on that basis alone, defendant hasn't met that threshold at the 40-year demarcation point for showing that there's even any applicability of Miller to this case in the first place. Secondly, with respect to parole eligibility, Your Honors, the defendant argues that he is serving a de facto life sentence because even though he has the opportunity to apply for parole, that will not get him out before serving 40 years. Our view, as we explain in our brief, is that the parole eligibility does, in fact, act as an effective tool for the defendant to reduce the length of his sentence to the under 40-year mark. The defendant argues that the parole statute in Illinois that applies to him does not provide what he characterizes and the Supreme Court has said in passing is a meaningful opportunity for release. There are several problems with this argument, though. Illinois' parole statute provides for an immensely more thorough opportunity, a much greater opportunity for this defendant to seek release than what the United States Supreme Court has prescribed for parole systems. The Supreme Court has historically had a very hands-off attitude in reviewing state parole systems. It requires two things, the opportunity to be heard and an explanation of reasons for the grant or denial of parole. Illinois' parole statute provides way more than that. The defendant will enjoy the assistance of IDOC in presenting his materials to the board. He can start as early as three years out, and during that process, he will have the opportunity, working with DOC and counselors in the prison, to compile a list of his mitigation evidence, his academic and other achievements in prison. He will have the right to an attorney. He will have the right to voluminous discovery. In other words, everything that the state presents in its case in chief against parole will be available to the defendant and his counsel. And the defendant will have two opportunities to seek parole, one after 20 years, which I don't think coincidentally is the same amount of time as the minimum term for a first-degree murder, and then after that, 10 years. So considering the scope of the remedy that the statute provides this defendant and other defendants similarly situated to him, our view is that it does provide at least a meaningful opportunity for him to secure release. And as far as I'm aware, the record does not show that that opportunity for release is available to this defendant right now. He has served more than 20 years in prison. He can go to the parole board now and ask for release. So it's unclear to me how he can argue that it doesn't present a meaningful opportunity when he has the wherewithal right now to go ask to get let out early, notwithstanding that he will be getting out in about seven years. So that is our threshold argument with respect to de facto life. And even if defendant does convince this court that he is, in fact, serving de facto life, he's not out of the woods yet, he has to show that the sentencing hearing in his case did not conform to the requirements of Miller. And it did. Jones v. Mississippi gave us a very nice set of guidelines for determining whether a Miller-compliant hearing is held. First, the sentence has to be discretionary life. It can't be mandatory. That's out of bounds. Second, the court has to have considered the mitigatory factors listed in Miller and since codified by our General Assembly in measuring the propriety of any sentence that might exceed life. Here the defendant did face a discretionary life term. He faced, at minimum, 26 years, which is 20 for first degree, 6 for attempt. On the high end, he faced 90, 60 for first degree, 30 years on attempt. He was sentenced to 80, a sentence falling within that discretionary range. Second, did the trial court apply the mitigation factors that were outlined in Miller and now required by our Code of Corrections? It did. The defendant complains that it might not have applied them in as much detail as he now prefers, but that's not the benchmark set by Jones. The benchmark is, did the court consider them? If it did, then his Miller claim must fail. What about this issue about the possible disability, mental disability, or lack of capacity because of the speech impediment? Well, your Honor, that sort of depends on how you want to look at that, not how the court wants to look at that. Under Miller, it's simply one factor in mitigation that the court needed to look at to the extent the court declined to give that weight or declined to give that – declined to give it weight or gave it some weight, or perhaps even, and I'm not conceding this misconstrued what the record showed in that respect, that's not a basis to vacate the defendant's sentence under the Eighth Amendment. If we're looking at the mitigation evidence through the lens of like excessive sentence, we look not only to what the trial court sentenced him to, if that sentence fell within the range prescribed by statute, that's presumptively valid, and the mitigation evidence, such as the speech impediment or other learning disabilities and so forth, those would be – the court's review of those would be examined on appeal for abuse of discretion. What about the judge's comments in terms of the issue of remorse? I mean, that's a credibility call. It's a credibility call. The trial court was there hearing the witness, and the trial court found that the defendant's pleas for mercy and for a lesser sentence because of his behavior in prison were not entitled to a great amount of weight. That was his call. If the court does – I encourage the court to take a look at the defendant's statement again. He, in effect, feels quite sorry for himself and says he's been through a lot, too, and he murdered a 7-year-old little girl. So I would ask that this court view that under the abuse of discretion standard or in – under Miller, if we're back to that aspect of the case, simply a mitigation factor that the court did consider, and its mere consideration of that is enough to satisfy the Eighth Amendment. And I want to ask you the same question I asked counsel with regards to parole, given the fact that People v. Spencer is currently before the Illinois Supreme Court. I mean, should we even weigh in to that? We take no position on whether – what the court should or shouldn't do. We believe that the overwhelming weight of authority on the parole eligibility question is on our side. People v. Gates, which is cited by my opponent, is what this court has characterized as an outlier in People v. Doe, which is unpublished, but we did attach that to our brief. Spencer will be argued in March. According to the Attorney General's Office, it's fully briefed and ready to go. Gates – we, in conjunction with the Attorney General's Office, filed a PLA in Gates, I believe it was last April, and we asked them to either take the case in reverse or hold pending Spencer. So our view is that the case – the case law is very well settled on our side, that Gates has a lot of defects, which I've outlined in my brief, that this court could decide in our favor on that without waiting for Spencer. If this court does decide in our favor before waiting for Spencer and Spencer comes out the other way, the defendant, of course, at that time will be free to file his own PLA, or rather this court would simply move on to the substantive Eighth Amendment claim rather than focus on our argument in our brief that he wasn't serving de facto life. So I actually – thinking about it, we probably wouldn't even be in a PLA stage at that point. This court would simply reject our argument on that and move on to the Eighth Amendment claim. And has your office or the Attorney General's Office heard anything with regards to Gates? Yes, Gates. We filed a PLA. No, no, but have you heard a response in terms of – No, they're holding it. They haven't decided it. We filed it in April, and holding it since April, that's a pretty long time for them to hold. So my best guess, on my experience, is that they're holding it for Spencer because we asked them to. One other quick point on the defendant's rehabilitative potential. I just want to clarify that the defendant is really overstating the trial court's finding on rehabilitative potential. This is all the court said on that. I thought about his potential for rehabilitation or evidence of rehabilitation, and generally speaking, most defendants probably do not – probably do have the potential for rehabilitation. So to construe from that, that this court found that the defendant had a great level of rehabilitative potential, simply not supported by this record. At the very most, the court declined to give it much weight, especially considering his post-imprisonment disciplinary record, which entails continued gang activity and enforcement exercises as a member of his gang. If the court has no further questions, we respectfully request this court affirm the defendant's sentence. Any questions? Any questions?  Okay. Thank you, Your Honor. Rubato. Thank you. Just briefly, Your Honor, I'd like to point out that the state has really made no argument that, other than his disciplinary records show that Leal de Leon is, in fact, permanently incorrigible and incapable of rehabilitation. But I would ask this court to consider that his disciplinary record, while this was several years ago now, did include one letter that was construed as an unauthorized organization contact. There were three – we're talking about three fights in more than two decades of time in prison, a two-month loss of good time, while serious and while causing the sentence to be into the de facto life category, should not be construed as indicative of permanent incorrigibility. So for those reasons and those argued before, we ask this court to vacate the sentence. I'm sorry. What was the last part? For the reasons argued, we ask this court to vacate the sentence. Okay. Great. Thank you. Thank you very much. This court wants to thank both counsels on a well-argued manner and also with regards to well-drafted briefs. This court will take this matter under advisement and will be rendering a decision shortly. The court is adjourned.